ConforMIS v. Iancu Please proceed, Mr. ConforMIS. Thank you. Thank you, Your Honors. May it please the Court, Matt Wolff for ConforMIS. The claimed embodiments are a device for essentially a drill guide, a saw guide, that sits on top of, in this case, a knee joint and is designed so that it can take into account the fragile, frayed, degraded, diseased cartilage. Sorry. It's not your fault, but you're really close and you're speaking very loudly. I apologize, Your Honor. I've been accused of that more than once and I should have learned by now. Sits on top of the knee and preserves the cartilage while at the same time providing a firm fixation so that when you drill, you're drilling in the right place. When you saw off a piece of bone, you're sawing in the right place. And the patents teach how to do this. It teaches how to assess the defects, how to image, model, select the temporary device so it sits on top of the cartilage and the bone and provides that stable platform we're talking about. The primary reference here that the PTAB relied upon, Rademacher, is similar in that it's designed to provide a temporary drill guide, but it rests on bone. It rests on bone and there is no mention of cartilage in the patent. There's no mention of cartilage anywhere in the history. And perhaps more importantly, all those teachings I mentioned that the patents that issue tell you how you can incorporate and rely upon the cartilage for that negative image to sit there properly, none of that teaching of assessment of defects, imaging, shaping, size and selection, modeling, none of that is in Rademacher. So that's what we're talking about today. Well, but the story doesn't end there because it was an obviousness combination of Rademacher or Fell and Alexander. Yes and no, Your Honor. And I say the no part because if you read the PTAB's opinion, it really reads like a single reference obviousness case. What Fell and Alexander add, I'm not clear sitting here today. What the PTAB's final written decision says is, in essence, Rademacher teaches everything. Well, the problem is, well, one of the two is that the PTAB doesn't teach Rademacher as a single reference obviousness ground. This is at A-6, the appendix. So having rejected Rademacher as a single reference obviousness, as it should have, because Rademacher doesn't teach making a mirror image of cartilage to be able to rest on and preserve the cartilage in a stable and secure way, having rejected that ground, it then turned around and looked at Alexander and Fell, and I'm speculating wildly here, Your Honor, and for that I apologize, but said, whoops, Fell and Alexander don't add anything. Alexander, and of course we've argued waiver in our briefs for the obvious reason that it's not mentioned in the PTAB's responsive brief here, but Alexander just teaches MRI techniques that were known, that don't have anything to do with creating a mirror image template, and Fell is exactly the opposite of what the claimed embodiments are. I mean, Fell, at A-10-30, for example, the purpose is to achieve a span-like effort to bridge the defective areas, not to reflect, not to image the defective areas, but to bridge them, to go over them, in the way that in a pothole on the street, you can either repair it or you can throw a big metal plate over it. Our patents are talking about engaging the hole, filling in the hole, using it for solidity, whereas Fell is saying go over it, and that's not disputed. Their expert, Dr. Mabry, and this is at A-8144, does it match the patient's joint surface, meaning Fell? Answer, one word, no. So we have Rademacher that doesn't teach anything about the core of the invention of the claims at issue. Well, let me ask a question. Yes, Your Honor. I'm going to encourage you to try to speak more softly also because the volume hasn't actually changed and it is really loud. But the board did find that Rademacher teaches a surgical tool that mates with the knee joint, which naturally includes cartilage, and they said that because this includes operational, quote, the natural, not pretreated surface of the osseous structure that that is without removing the cartilage, so that it is in fact teaching use on cartilage, even though it may never mention the word cartilage in the reference, one of skill in the art would understand that it mates with a knee joint in its natural state, which includes cartilage. So that was their, as I understand it, their fact-finding, which we have to review for substantial evidence. So what's wrong with that? So, Your Honor, I think the quote from Fell, so let's separate what Fell says and what Rademacher says. What Fell is talking about is using a prosthetic meniscus, and it does say mate it in the sense of you want it to be the right shape. But I'm talking to you about what the board explicitly held as a fact-finding with regard to Rademacher much or whatever it is. The quote you were citing is actually pulling part of Fell because that's why I think there was a conflation, and I apologize if I misunderstood. No, it's probably my fault. I probably mixed him up. Your Honor, in terms of Rademacher, the board acknowledged, and this is at A84, that it doesn't say anything about cartilage. It repeatedly says. I said that. The board expressly indicates that it doesn't use the word cartilage, but it works on the natural knee, which at that joint a skilled artist would know includes cartilage. So, Your Honor, they do talk about a sentence at 839 where it talks about a computer mold of parts of the individual natural, i.e. not pretreated, surface of the osteostructure. Here we go. What I said is true. On page 84, when discussing Rademacher, they said the terms bone and osteostructure of matching only, this is your contention, bone and osteomaterial, not cartilage. Rather, we find the use of this language reflects a broad disclosure of different embodiments of bones, some of which include natural cartilage on their outer surface and some of which do not. So, basically, what I said is correct. And then they say it again in 86 where they rely on the witness's testimony. Your Honor, I apologize if I misheard you. What it is saying about Rademacher is indisputably true, that you can have cartilage on the knee of Rademacher. What Rademacher doesn't teach, doesn't say anything about, is that the device you're creating, the claimed device, reflects that cartilage, incorporates that cartilage. In some way, it mirrors that cartilage. That's why the fell language, that was the confusion there. But Rademacher doesn't say anything about the cartilage. To the contrary, every place that Rademacher talks about what it connects to, how it images, and let me just give you some examples. It is replete with statements like, quote, the template is on the exposed surface of the bone. That's at A838. The individual template four is set onto the bone, 17. That's at A857. The individual template is, quote, set directly onto the exposed bone surface in a clearly defined manner, end quote. That's at A849. So Rademacher, not surprisingly, has an MRI procedure that can see the cartilage. We're not suggesting it's blind to the cartilage. But Rademacher doesn't suggest doing anything with it. It doesn't suggest that you take the information you may have about cartilage that may be there, likely is there, and then therefore create the part of the claim. The claim is about taking the image of cartilage and mirroring it. And Rademacher says, take whatever image you want. But then what you're mirroring is the bone. What you're attaching to is the bone. Perhaps I misunderstand the board's opinion at page 86 when they cite Dr. Mabry's testimony, which they explain that some would include cartilage only. Some would include cartilage and bone. Others would include only exposed bone. And they want to say this is consistent with Rademacher's broad disclosure of applying this to various types of bone, some of which include and some of which exclude cartilage. Your Honor, we don't disagree with any of those fact findings. We absolutely agree with all of that. The question is not does Rademacher in step one ---- Yeah, but then, okay. So then if you're talking about combining it with the other references, the board goes on to conclude even if Rademacher only teaches matching a bone, it would have been obvious to swap out the bone only imaging information of Rademacher with bone plus cartilage imaging information taught by Fell and Alexander to make the claim surgical, too. Why isn't there substantial evidence to support that conclusion? Your Honor, there's because ---- and the word imaging kept appearing in the quote you read, Your Honor. And that's exactly my point. That's exactly the error. The quote you just summarized is where we think the PTAB went awry. The issue is not whether Rademacher images, catches in its MRI cartilage. Of course it does. The question is not whether Alexander images cartilage. Of course it does. The question ---- anybody imaging the knee for any purpose is going to see the cartilage. The claim is not about imaging. The claim is about what you do with the image. The claim is then having the image of cartilage ---- But then does your template reflect the image you capture? Is your template of the bone or is your template of the bone plus cartilage? And there's nothing in Rademacher or Fell or Alexander that says your device does anything with the cartilage information. To the contrary, as I just read that laundry list of Rademacher, it says you match to the bone. But it does say it uses basically non-pretreated surface of the osteostructure, which unless I'm mistaken, given the rest of the disclosure, sometimes it includes cartilage. Your Honor, two responses to that. One is that is step one and that's 8,003. Yeah, but we don't remove the cartilage and the cartilage is present and then you're making this template based on that joint. You're including ---- I think it's certainly substantial evidence would support the idea that you're including the cartilage. And that's what the board found. I don't see how on a substantial evidence standard we could undermine that. Your Honor, because respectfully, that's not in Rademacher. You can see the cartilage. So if the bone is a regular shape and there's cartilage that's in an irregular shape ---- Well, they said natural, not pretreated surface, correct? Right. That's in the imaging step. That's talking about imaging, not the creation of the template. It's literally step one and step two. So if you look at that page of Rademacher, that is in the imaging step. That's where you see natural. You see whatever's there. But the board found there's no disclosure in Rademacher of removing the cartilage before you get to the template step, so why would it not be included? Because there's a third option, and that's precisely what the invention's about. When there are options, though, Mr. Wolf, that's when we have to defer on a substantial evidence standard to the PTO's choice among those options. But you're not allowed to pull, respectfully, you're not allowed to pull a disclosure of a device that's simply not mentioned. Wait. And on page 839, Rademacher generates a negative mold of the natural surface. Your Honor, that's ---- It's about the generating the mold part of the natural surface, the same natural surface that they described as the pretreated surface that is capable of including cartilage. That's step one, Your Honor, and that's in the computer. That's not the template. That's paragraph one, and if you go to paragraph two, the above negative mold can reproduce segments of a bone surface. So it tells you precisely what the mold is of. The mold is of bone surface, not of cartilage that may or may not be there. So this is not merely the PTAB inferring something from an absence. This is the PTAB inferring something that is directly contradicted by the reference itself. The reference tells us that what you're reproducing is the bone surface, not cartilage. And that's not surprising because it doesn't teach you all the things that our patents teach you about how you deal with a fundamentally different material, disease cartilage, which is inherently less stable, inherently less predictable, inherently less of a foundation than bone is. So, Your Honor, you're right. We have a substantial evidence standard, and that is a hurdle that we have to overcome. But when the reference itself says bone, bone, bone, bone, bone, you don't get to then say, but we infer that you really meant cartilage when you're talking about what you're building, not what you're seeing, not the imaging, but what you build. Yes, Your Honor. No, go ahead. No, finish, because you're interrupting. Yeah, no, I apologize. I think I've... I'm sorry. The only thing else, the last point I'll make, Your Honor, is on the reasonable expectation of success. I think this is laid out in our brief clearly, but it is required that if you're combining references, you have a reasonable expectation of success. There is literally eight words in the record that goes to this point, the dissent properly found a conclusory. I don't believe there is any evidence, substantial or otherwise, upon which the PTAP could have found a reasonable expectation of success. Thank you. Well, why don't you start with the reasonable expectation of success and tell us how the board found that sometimes there's smooth cartilage and there's no reason to suspect it wouldn't work on smooth cartilage. Sure. So the reasonable expectation of success, the board talked about how Rademacher images cartilage using MRI, that cartilage and bone are the only two possible surfaces, that matching cartilage would simplify the surgery consistent with Rademacher's goals, that Rademacher doesn't teach that a doctor would avoid matching cartilage, that Rademacher discloses operating on joints that naturally include cartilage and matching a joint to them. But their expert testified that damaged cartilage would be frayed or something, he said, and that's why this wouldn't work. It wouldn't be a reasonable expectation of success. So there are a few responses to that, Your Honor. There's not all damaged cartilage is frayed. That was the smooth thing. That's where I was trying to get you to go. Oh, okay. I apologize. Right. Not all damaged cartilage is frayed, and Dr. Mabry pointed out that the reference that Dr. Clark was pointing to was patellar cartilage, which, as Dr. Mabry said, is subject to more shearing forces and more likely to be frayed than the cartilage on the femur or the tibia. And the board, this is, we're looking at Appendix 100-101. The board goes on at some length discussing that, right? Right. That's right. 101 in particular. And on top of that, Conformis' patents themselves don't address frayed cartilage and how they don't mention frayed cartilage. So they apparently didn't think that was such a big problem. This case, reading the briefs, is a little odd because I think Mr. Wolfe is not completely wrong that part of this read like it's an anticipation of Rademacher, which the board did not institute on anticipation. So you agree with that, right? I mean, it's a little odd. I think that's right. I think that Rademacher doesn't mention cartilage, as Conformis points out explicitly. And so it was sort of a, well, it sort of discloses this because the joint naturally includes cartilage, but even if you didn't have that, we have a second reference that shows matching cartilage. If the court doesn't have any other questions, I'm happy to rest on the briefs. Thank you. Thanks. Your Honors, I'll focus with my brief time remaining on the reasonable expectation of success. Everything counsel just cited as the evidence, and there's no doubt that on the motivation to combine, the PTAB talks at length about the motivation to combine, and we haven't appealed the motivation to combine. What we've appealed was the reasonable expectation of success, and if you look at A29, the sum total of the reasoning of the PTAB on reasonable expectation of success is with a reasonable expectation of success. So, I mean, this is difficult for us, and we did go back to the briefs. I mean, obviously what matters is what arguments you made on reasonable expectation of success and whether the board adequately addressed those arguments. So what's the argument that you made in your briefing to the board that it did fail to address with regard to reasonable success? I will answer your question directly, Your Honor. I would suggest that the burden might have been flipped in the question because, of course, they have the burden below of showing reasonable expectation. Yeah, but we think you're reading it, so I'm looking for what is missing. So I'm asking you, what is it you raised that they didn't deal with? Understood, Your Honor. We talked about, I think we used many metaphors, crab-like structures, febrile, erratic, decayed disease, that that is not a stable platform for Rademacher to be built upon. If you try to take a bone-imaged device, the mirror image of the bone, and stick it on uncertain, unstable, crab-like, as a Marylander that offends me on some level, but sits on top of the cartilage, that is an unstable platform. So that was Dr. Clark's explanation for why you would not have a reasonable expectation of success. I mean, it's kind of common sense, but that's what he laid out, and that's what neither the PTAB nor the board in its appellate briefing addressed. Your time has expired. Thank you very much. Okay, thank you. Thank both sides on the cases. And I apologize for the volume.